This appeal is from a judgment establishing a boundary line. We reverse.
The parties are coterminous landowners who have all taken their respective parcels of land by reference to government survey. In 1976, a dispute arose over the true boundary lines between them. Litigation ensued, and the trial court entered a decree, that in effect, relocated the interior subdivision lines of a government surveyed section on a line contended for by the Chappells.
The parcels of property in question all lie in Section 34, Township 7 South, Range 3 West in Morgan County. The Guyses purchased the W 1/2 of the SE 1/4 of the section (80 acres) in 1972. Their neighbor to the west, J.W. Chappell, Jr., owns the E 1/2 of the SW 1/4 of the section (80 acres). North of Chappell, Jr., and northwest of the Guyses is plaintiff J.W. Chappell, Sr., who owns the SE 1/4 of the NW 1/4 of the section (40 acres), less two acres owned by Chappell, Sr.'s son, Jerry. Directly to the north of the Guyses and east of Chappell, Sr., is Robert Smith who owns the S 1/2 of the NE 1/4 of the section (80 acres). Smith failed to appear and suffered a default judgment. The parcels are situated so that the four landowners all share a common corner located in the center of the section. It is the exact location of this common corner which is the cause of the current dispute.
In 1976, the Guyses had a survey conducted to locate the boundaries of their property. The surveyor established a line between the property of the Guyses and Chappell, Jr. Problems arose when it was realized that the line, if extended north to establish the boundary between Chappell, Sr., and Smith, would pass through the house of Jerry Chappell. Consequently, Chappell, Sr., informed the Guyses and *Page 946 
their surveyor, that a survey had been conducted in 1937, and a stob placed at the common corner of the parcels per the agreement of the owners at that time. This stob was located with the aid of a pin finder, and was found to be 68 feet south and 141 feet east of the common corner found by Guyses' surveyor. More importantly, a line drawn south from this stob would run directly through the Guyses' house and barn. The validity of the Guyses' survey was not challenged at trial. On the other hand, it was never revealed who conducted the 1937 survey or how.
The trial court's final decree established the common corner of the parties as the stob placed in 1937. Moreover, the decree stated that the Guyses owned the W 1/2 of the SE 1/4 of Section 34, and the other parties owned their respective parcels described by government survey, as set out above. Thus, the final decree purported to establish the 1937 stob as the true center of Section 34. In doing so, the trial court misapplied the law to the facts.
Our cases are clear that no agreement or act (e.g., adverse possession) of adjacent landowners can relocate the section lines, or interior subdivision lines established by government survey, for they are certain in legal contemplation. Sims v.Sims, 273 Ala. 103, 134 So.2d 757 (1961); Upton v. Read,256 Ala. 593, 56 So.2d 644 (1952); Alford v. Rodgers, 242 Ala. 370,6 So.2d 409 (1942). "[R]ecognition by adjoining owners of a false [government survey] line as the boundary between them is without effect, unless the party claiming beyond the true line also holds hostile possession up to the false line until the bar of the statute is complete." Oliver v. Oliver, 187 Ala. 340,343, 65 So. 373, 375 (1914). In the latter instance, the government survey is not changed. Instead, the boundary line between the landowners is changed so that the government survey line is no longer the location of the boundary. Godsey v.Anglin, 261 Ala. 19, 73 So.2d 92 (1954); Alford v. Rodgers,supra. Here it was undisputed that the Guyses' survey correctly located the government survey lines. The trial court's final decree would have the effect of relocating the government lines on the basis of an erroneous agreement among the prior landowners, and that it cannot do.
Following closing arguments, the plaintiffs amended their complaint to add a claim of adverse possession. Although the trial court's decision obviously did not rely on a finding of adverse possession, the Chappells assert here that adverse possession was established and would support the result reached by the trial court. We disagree.
While Chappell, Sr., has owned his property for about thirty years, Chappell, Jr., purchased his eighty acres in 1968, so that he would have to rely on tacking to establish any claim through adverse possession. Recent cases have made it clear that tacking is permissible even though the conveyance does not describe the claimed property so long as the grantee is put into actual possession of the disputed area. Watson v. Price,356 So.2d 625 (Ala. 1978); Carpenter v. Huffman, 294 Ala. 189,314 So.2d 65 (1975). In Carpenter, a fence was located along the line to which Mrs. Huffman claimed by adverse possession. Here there was a fence, too, but it was located generally along the line established by the Guyse survey. Chappell, Jr.'s activities east of this fence were sporadic. He cut some stove wood, and grew three, or four crops of strawberries. (The strawberries were later bush hogged by Guyse, apparently without objection.) Otherwise, all the indications to an observer were that the property east of the fence was part of the Guyse parcel.
"In adverse possession, the burden of proof rests on the claimant [cite omitted] to prove that his possession is actual,hostile, open, notorious, exclusive, and continuous for the statutory period." Smith v. Claybrook, 349 So.2d 1087, 1089
(Ala. 1977) [emphasis added]. Just as Chappell, Jr., failed to show the necessary elements of adverse possession, so did his father. This is patently obvious from the fact that the Guyses *Page 947 
owned the property for four years before they were even aware that anyone else claimed an interest in it. In fact, Chappell, Sr.'s testimony revealed that the disputed area had been worked on several occasions throughout the years by the Guyses' predecessors in title. Chappell, Sr., also stated that none of the area had been worked by anybody for about ten years. At best, control of the area has been confused. The proof simply failed to establish that either of the Chappells had actual, hostile, open, notorious, exclusive, and continuous possession of the property from the true government survey lines to the stob. The boundaries between the parties remained along the lines of the government survey.
Because the trial court's decree attempted to relocate the government survey lines it is erroneous as a matter of law. Adverse possession was not shown. Consequently, the judgment must be reversed and remanded so that the trial court may enter a decree establishing the boundaries between the parties as determined by the Guyse survey.
REVERSED AND REMANDED.
BLOODWORTH, JONES, ALMON and EMBRY, JJ., concur.
[EDITORS' NOTE: SKETCH IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 948